**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**TROY G. AVERA,**

      **Plaintiff,**

**vs.**                        **Case No. 4:08cv550-RH/WCS**

**UNITED AIR LINES,
U.S. DEPARTMENT OF
TRANSPORTATION, and the
FEDERAL AVIATION ADMINISTRATION,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

The Federal Defendants filed a motion to dismiss, doc. 52, on September 4, 2009, and the *pro se* Plaintiff was directed to file a response in opposition to the motion. Doc. 53. Plaintiff filed a response to the motion, doc. 58, and the motion to dismiss is ready for a ruling.

Plaintiff has additionally filed a motion to strike the "Fair Treatment for Experienced Pilots Act" and the "Age 60 Rule" as unconstitutional. Doc. 56. The motion is supported by a memorandum of law. Doc. 57. The Federal Defendants have filed a memorandum in opposition to Plaintiff's motion. Doc. 59. Defendants assert that Plaintiff is essentially seeking "an order entering summary judgment on his

constitutional claims" and, as such, the motion fails to comply with the requirements of N.D. Fla. Loc. R. 56.1(A).  *Id.*  Defendants also point out that Plaintiff's arguments are identical to the arguments Plaintiff raises in his opposition to the motion to dismiss.  *Id.* To avoid repetitious filings, *inter alia*, Defendants request that the motion be denied.

If a plaintiff is entitled to relief in his lawsuit, relief would normally come at the conclusion of the lawsuit.  Nevertheless, Plaintiff's motion to strike could only be granted if Defendants' motion to dismiss, doc. 52, is denied.  This report and recommendation will address both the motion to dismiss, doc. 52, and the motion to strike, doc. 56.

**Claims in the Amended Complaint, doc. 43**

This is a hard case on its facts.  Plaintiff has 45 years experience as a pilot.  He has many years of experience as a commercial airline pilot.  During his career, the FAA had a Rule that pilots must retire at age 60.  Plaintiff's 60th birthday occurred in May, 2007, and he lost his job with United Airlines.  In December, 2007, Congress enacted the Fair Treatment of Experienced Pilot Act ("FTEPA") extending the retirement age to 65.  It made the law partially retroactive to Plaintiff and others who had been forced to retire at age 60 but who were still not yet age 65,[1] but did not restore their seniority. Plaintiff has reapplied for his former job, but has not been hired probably because he no longer has seniority.

Plaintiff's amended complaint alleges violation of the Age Discrimination in Employment Act ("ADEA"), the Employee Retirement Income Security Act ("ERISA"), the FTEPA, the Fair Labor Standards Act ("FLSA"), the Due Process Clause, and the

---

[1] The group are those who were born between December 13, 1942, and December 13, 1947.

Equal Protection Clause of the U.S. Constitution.  Doc. 43.  Plaintiff further contends the

FTEPA is a Bill of Attainder, in violation of the Constitution.  *Id.*, at 12, 14.[2]  The

Defendants are the United States of America, the U.S. Department of Transportation,

the Federal Aviation Administration (collectively "the federal Defendants), and United

Airlines, Inc.  Doc. 43.  Plaintiff seeks monetary damages, a declaratory judgment, and

requests that the FTEPA be ruled unconstitutional.  *Id.*, at 10-14.

**Motion to Dismiss, doc. 52**

Defendants assert that Plaintiff's "claims for damages are barred by sovereign

immunity."  Doc. 52, p. 3 on the electronic docket (ECF).[3]  Further, they contend that

Plaintiff's claims for equitable relief based upon a challenge to the "Age 60 Rule" are

moot, and that this Court lacks jurisdiction over a final order of an FAA Administrator

and over Plaintiff's ADEA challenge.  *Id.*  On the merits, Defendants assert that Plaintiff

fails to state a claim upon which relief may be granted.  *Id.*, at 4-5.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV.

P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the

plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its
> face." *Id.* [Twombly], at 570, 127 S.Ct. 1955.  A claim has facial plausibility

---

[2] The page numbers on the paper copy of doc. 42 and as numbered on the
electronic docket (ECF) are the same.

[3] The page numbers for doc. 52 differ, and hereafter citations to doc. 52 are to
the pages as numbered on the electronic docket.

when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct
alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin
to a "probability requirement," but it asks for more than a sheer possibility
that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads
facts that are "merely consistent with" a defendant's liability, it "stops short
of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*,
at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

*Pro se* complaints are held to less stringent standards than those drafted by an

attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v.

Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

Nevertheless, a complaint must provide sufficient notice of the claim and the grounds

upon which it rests so that a "largely groundless claim" does not proceed through

discovery and "take up the time of a number of other people . . . ." Dura

Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577

(2005), *quoted in* Twombly, 127 S.Ct. at 1966.

**Factual Allegations in the Amended Complaint, doc. 43**

Plaintiff was born on May 12, 1947, and by age 17, or about 1961, he had

qualified for a private pilot's license. Doc. 43, p. 3. Plaintiff was a United States Naval

Aviator from 1971-1978, flying an F-4 and F-14 from an aircraft carrier. *Id.* Plaintiff has

over 18,000 hours flying large commercial aircrafts, including the DC-10-30, B-777, and

B-747-400. *Id.* He has flown over 45 years without an accident, incident, or violations.

and is an experienced pilot. *Id.*

From May 8, 1995, until May 31, 2007, Plaintiff was a "flight officer" (pilot) with

United Airlines. *Id.*, at 3. Plaintiff's last position with United was flying a Boeing 747-

400 aircraft "as a member of augmented cockpit crews," consisting of a captain and one to two other First Officers. *Id.*

In 1959, the FAA established age 60 as the retirement age for air carrier pilots (hereinafter, the "Age 60 Rule"). Doc. 43., at 3-4. Plaintiff asserts that the Equal Employment Opportunity Commission (EEOC) "has determined that age is not a bonafide occupational qualification ("BOQ") for employment as a pilot." *Id.*, at 4.

On November 23, 2006, the FAA exempted "foreign citizen air carrier pilots over age 60 from the FAA Age 60 Rule . . . ." *Id.*, at 4. According to Plaintiff's amended complaint, no change was made to the Age 60 Rule but it was "applied only to U.S. citizen pilots." *Id.*

In January of 2007, the FAA entered a Notice of Proposed Rule Making to the Age 60 Rule. *Id.*, at 4. The FAA announced that it would not grant a waiver for U.S. pilots unless the request for exemption was also joined by the pilot's air carrier employer. *Id.* Plaintiff filed a petition with the FAA requesting an exemption from the Age 60 Rule, and also requested that United, his employer, join in his request for the waiver. Defendant United refused to join in the exemption request and, subsequently, the FAA denied Plaintiff's request on April 24, 2007. *Id.; see also* p. 8.

On May 12, 2007, when Plaintiff reached age 60, he was "removed from flying status by United Airlines and on May 31, 2007, [Plaintiff] was terminated from employment by United Airlines and such termination was based solely on [Plaintiff] reaching age 60." *Id.*, at 5. Plaintiff was not offered any other employment opportunity with United, and Plaintiff alleges that even though he was qualified for certain positions, United offered those positions to "applicants under age 40." *Id.*

The Collective Bargaining Agreement does not set forth any specific mandatory retirement age for pilots. *Id.*, at 5. Plaintiff contends that his retirement income was subsequently reduced by fifty percent by the Pension Benefit Guarantee Corporation (PBGC) when Plaintiff was terminated, finding Plaintiff "had volunteered for 'early' retirement . . . " *Id.*

"On December 13, 2007, Congress passed the Fair Treatment for Experienced Pilots Act (FTEPA), Pub.L. No. 110-135, 121 Stat. 1450 (2007), which amended 49 U.S.C. § 44729." Carswell v. Air Line Pilots Ass'n Intern., 540 F.Supp.2d 107, 111 (D. D.C., 2008). Thus, the FTEPA was enacted a little over six months after Plaintiff turned 60 and was terminated from employment. Shortly thereafter, Plaintiff applied "for a 'new hire' pilot position" with United. Doc. 43, p. 5. Initially, Plaintiff was told he was "not qualified" for any pilot positions, but in February of 2008, United "reversed its position and interviewed Plaintiff" for a "new hire" pilot position. *Id.* Plaintiff contends he was placed at the bottom of the hiring list, and although United filled the pilot vacancies in 2007 with "applicants younger than age 40," he was not offered employment. *Id.* Plaintiff alleges that he has suffered economic damages of lost wages, lost retirement benefits, lost medical and dental insurance, and other benefits. *Id.*, at 6. Plaintiff initiated this case on December 9, 2008.

**Legal Analysis**

The FAA has authority to issue "regulations in the interest of safety for the maximum hours or periods of service of airmen and other employees of air carriers" and establish "minimum safety standards." 49 U.S.C. § 44701(a)(4), (b)(1), (d)(1)(A). Doc. 52, p. 5. Exemptions to FAA regulations are permitted only if "in the public interest." 49

U.S.C. § 44701(f).  *Id.*  The most important public interest is for the "safety and security" of air commerce.  49 U.S.C. § 40101(d)(1).  *Id.*

The FAA issued a rule in 1959 providing that no person could serve as "a pilot on an airplane . . . if that person has reached his 60th birthday."  14 C.F.R. § 121.383(c). Supporting that decision was the FAA's finding "that there is a progressive deterioration of certain important [physiological] and psychological functions with age, that significant medical defects attributable to this degenerative process occur at an increasing rate as age increases, and that sudden incapacity due to such medical defects becomes significantly more frequent in any group reaching age 60."  24 Fed. Reg. 9767, 9767 (1959), *quoted in* doc. 52, pp. 5-6.  Due to safety risks and the unpredictable nature of such an incapacity, the "Age 60 Rule" was created to prohibit persons from piloting large commercial aircraft after reaching age 60.  Doc. 52, p. 6.

On December 13, 2007, nearly fifty years after the Age 60 Rule, the FTEPA was passed allowing "a pilot [to] serve in multicrew covered operations until attaining 65 years of age."  49 U.S.C. § 44729(a); doc. 52, p. 6.  The law expressly abrogated the "Age 60 Rule."  49 U.S.C. § 44729(d); doc. 52, p. 6.

The statute is not retroactive to any pilot who had already attained age 60, with two exceptions.[4]  The "non-retroactivity" clause of FTEPA means "that individuals who

---

[4] The statute provides:

**(1) Nonretroactivity**. – No person who has attained 60 years of age before the date of enactment of this section may serve as a pilot for an air carrier engaged in covered operations unless –

**(A)** such person is in the employment of that air carrier in such operations on such date of enactment as a required flight deck crew member; or

were over 60 when FTEPA was passed can work as pilots, but – unless they are

'required flight deck members' – *without their accrued seniority*."  Brooks v. Air Line

Pilots Ass'n, Intern., 630 F.Supp.2d 52, 53 (D. D.C., 2009) (emphasis added).  "The

cancellation of seniority is significant, because pilots are allocated work through a

competitive bidding system that gives senior pilots priority in choosing the types of

aircraft they will fly, their positions in the cockpit, the locations they fly from, and the trips

they will work."[5]  *Id.*

Finally, the FTEPA also creates an exemption for liability for actions taken

pursuant to either the FTEPA or the Age 60 Rule.  Doc. 52, p. 7; 49 U.S.C. §

44729(e)(2).[6]


**Sovereign Immunity**

---

**(B)** such person is newly hired by an air carrier as a pilot on or after such date of enactment without credit for prior seniority or prior longevity for benefits or other terms related to length of service prior to the date of rehire under any labor agreement or employment policies of the air carrier.

49 U.S.C.A. § 44729(e)(1).

[5] Thus, since Plaintiff was not employed when the FTEPA took effect, his seniority was cancelled and when he had the opportunity to apply again (to fly during the period he was ages 60 through 65), he no longer had seniority.

[6] "An action taken in conformance with this section, taken in conformance with a regulation issued to carry out this section, or taken prior to the date of enactment of this section in conformance with section 121.383(c) of title 14, Code of Federal Regulations (as in effect before such date of enactment), may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality."  49 U.S.C. § 44729(e)(2).

The federal Defendants raise sovereign immunity to Plaintiff's claims for monetary damages.  Doc. 52, p. 8.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983), quoted in Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Com'n, 453 F.3d 1309, 1315 (11th Cir. 2006).  "The United States' immunity from suit extends to its agencies."  ASEDAC, 453 F.3d at 1315, citing FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  A waiver of federal sovereign immunity must be "unequivocally expressed in statutory text" and will not be implied.  Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996), quoted in ASEDAC, 453 F.3d at 1315.  Any ambiguities as to a purported waiver of sovereign immunity is viewed in favor of immunity.  United States v. Williams, 514 U.S. 527, 531, 115 S.Ct. 1611, 1616, 131 L.Ed.2d 608 (1995); ASEDAC, 453 F.3d at 1315.

In this case, there is no ambiguity.  The United States has not consented to suit regarding Plaintiff's age discrimination claim (the ADEA claim) and Congress did not waive immunity.  Indeed, there is no claim upon which relief may be granted.  There is no ADEA claim against the federal Defendants.[7]  Further, the FTEPA provides that there is no liability for actions "taken in conformance" with that law or the prior "Age 60

---

[7] They are not Plaintiff's employers and the ADEA does not place a substantive limitation upon the FAA as a regulator of the airline industry.  Professional Pilots Federation v. F.A.A., 118 F.3d 758, 763 (D.C. Cir. 1997), cert. denied, 523 U.S. 1117 (1998).

rule" in a proceeding "brought under any employment law or regulation."  49 U.S.C. §

44729(e)(2).  Plaintiff claims age discrimination in employment for actions required by

the Age 60 Rule, which was in effect prior to passage of the FTEPA.  The federal

Defendants have sovereign immunity from Plaintiff's claims for monetary damages.

To the degree Plaintiff seeks monetary damages based on constitutional

violations, the government is also immune.  Absent waiver, federal agencies are

immune from suits for damages for alleged constitutional violations.  *See* FDIC v.

Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

**Mootness**

Defendants also contend that Plaintiff's claim for equitable relief is moot because

the regulation which was the basis for Plaintiff's termination has been superseded by

statute and is no longer effective.  Doc. 52, pp. 10-12.  When the FTEPA was passed, it

declared the FAA's prior "Age 60 Rule" would "cease to be effective" upon enactment.

49 U.S.C. § 44729(d);[8] doc. 52, p. 11.  Thus, Defendants argue that after the FTEPA

was enacted, there is no longer an "exemption" from the Age 60 Rule because there is

*no* Age 60 Rule.  Doc. 52, p. 11.  Because the Rule is no longer in effect, Defendants

contend that Plaintiff's claim that he is entitled to an exemption is moot.  *Id.*

In Kremens v. Bartley, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed. 2d 184 (1977),

plaintiffs sought to challenge certain statutes governing voluntary admission to mental

health facilities.  During the course of the proceedings, the challenged statutes were

---

[8]  The statute provides: "(d) Sunset of age 60 retirement rule. – On and after the
date of enactment of this section, section 121.383(c) of title 14, Code of Federal
Regulations, shall cease to be effective."  49 U.S.C. § 44729(d).  The Public Law was
enacted on December 13, 2007.  Pub.L. 110-135, 121 Stat 1450.

amended, and by the time the case reached the Supreme Court, a new Act completely repealed provisions which had been declared unconstitutional in the lower courts.  431 U.S. 119, 124-127.  The Court held that the change in law mooted the claims and there was no longer a "live case or controversy" as required by Article III of the Constitution. Kremens v. Bartley, 431 U.S. at 128, 97 S.Ct. at 1715, *citing* Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975).  In noting the claims that were moot, the Court instructed that it must "apply the law as it is now, not as it stood below." Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), *cited in* Kremens, 431 U.S. at 129, 97 S.Ct. at 1715.

Since the FTEPA repealed the Age 60 Rule upon enactment and there is no longer any such rule, Plaintiff's claims concerning the Rule are moot.  That finding is in line with other courts that also dismissed Age 60 Rule challenges as moot because the rule was no longer in effect.  Adams v. F.A.A., 550 F.3d 1174, 1176 (D.C. Cir. 2008), *cert. denied*, 130 S.Ct. 103 (2009) (holding that the "Act, which expressly abrogates the Age 60 Rule, moots the petitions for review of the orders denying exemption from the Age 60 Rule."), *cert. denied* 130 S.Ct. 103 (2009); *see also* Jones v. U.S. Dept. of Transp., 2009 WL 2832030, *1 (D.C. Cir. April 22, 2009); Oksner v. Blakey, 2009 WL 2843552, *1 (9th Cir., Sept. 3, 2009).

**Summary regarding sovereign immunity and mootness**

No equitable relief can be provided to Plaintiff for a Rule that is no longer in effect.  Moreover, monetary damages are unavailable as well as the federal Defendants have sovereign immunity.  The Defendants' motion to dismiss should be granted as to Plaintiff's claims challenging the Age 60 Rule.

**Jurisdiction**

Jurisdiction is lacking to review the FAA's denial of Plaintiff's request to be exempted from the Age 60 Rule.[9]  Congress has given "exclusion jurisdiction" to the United States Court of Appeals for the District of Columbia or the "court of appeals of the United States for the circuit in which the person resides" to review an order issued by the Secretary of Transportation or the Administrator of the Federal Aviation Administration.  49 U.S.C. § 46110(a), (c).  This Court does not have jurisdiction over the FAA's administrative decision to deny Plaintiff's request for an exemption.  Constitutional challenges do not "permit a litigant to bypass the administrative process . . . ." Gaunce v. deVincentis, 708 F.2d 1290, 1293 (7th Cir.), *cert. denied*, 464 U.S. 978 (1983) (quoting Robinson v. Dow, 522 F.2d 855, 857-858 (6th Cir. 1975), *quoting* DuBois Clubs v. Clark, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967); Green v. Brantley, 981 F.2d 514, 520-521 (11th Cir. 1993) (dismissing case based on finding that district courts lack subject matter jurisdiction to review administrative orders *or Bivens*-type actions for damages related to such administrative orders).  Relying on the Seventh Circuit's opinion in Gaunce, *supra*, the Eleventh Circuit has held that a plaintiff may not circumvent the exclusive jurisdiction of the court of appeals as provided in 49 U.S.C. § 1486(a)[10] by collaterally attacking administrative orders.  Green, 981 F.2d at 520.

---

[9] The court does have jurisdiction to determine the challenge to the FTEPA.

[10] The relevant statute which now provides for jurisdiction in the court of appeals or District of Columbia Court of Appeals, § 46110, was previously codified at 49 U.S.C. § 1486(a) (1992).

Also instructive is <u>Doe v. F.A.A.</u>, 432 F.3d 1259 (11th Cir. 2005), which held that the United States District Court for the Middle District of Florida did not have subject matter jurisdiction to enter an injunction.  Relying on <u>Thunder Basin Coal Co. v. Reich</u>, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the court found that the FAA had authority over aviation safety, and that any order entered after the administrative process could be appealed.  The court concluded that a litigant could not "avoid the statutorily established administrative-review process by rushing to the federal courthouse for an injunction preventing the very action that would set the administrative-review process in motion."  <u>Doe v. F.A.A.</u>, 432 F.3d at 1263.  The <u>Doe</u> decision also reinformed the prior <u>Green</u> decision which found that alleging a constitutional violation which is "inescapably intertwined" with the administrative order does not eliminate the requirement from the statutory scheme to seek review in the court of appeals.  432 F.3d at 1263, *explaining* <u>Green</u>, *supra*.

Defendants are correct that the FAA's denial of Plaintiff's application for an exemption from the Age 60 Rule is an "order" under § 46110.  As such, it is not reviewable in this Court.  Doc. 52, pp. 13-14.  The claims Plaintiff seeks to litigate here (equal protection, due process, and age discrimination claims) are "inescapably intertwined" with the FAA's order.  Those claims are an impermissible collateral attack on the FAA's order.  As this Court lacks subject matter jurisdiction over these claims, the federal Defendants' motion to dismiss, doc. 52, should be granted.

### Constitutionality of the FTEPA

#### Due Process

Plaintiff seeks a declaratory judgment finding the FTEPA to be unconstitutional "in that the Act violates the Due Process and Equal Protection clause of the Fifth Amendment of the U.S. Constitution and the prohibitions against taking without compensation and Bills of Attainder of [the] Constitution of the United States of America."  Doc. 43, p. 11.  Plaintiff alleges that the FTEPA is "facially flawed" and "there are no circumstances under which the Act can be applied which would meet constitutional muster."  *Id.*, at 12.

The federal Defendants contend that Plaintiff does not have a "property interest" or legitimate claim of entitlement to be a commercial airline pilot after the age of 60.  Doc. 52, pp. 20-21.  They argue that the FTEPA did not take away a liberty interest because Plaintiff had already been prohibited from flying by the Age 60 Rule.  *Id.*, at 21.  Moreover, Defendants assert that the FTEPA actually gave Plaintiff more rights than he had before its enactment.  Doc. 52, pp. 21-22.  By permitting pilots to fly until age 65, Plaintiff has obtained an opportunity that was previously foreclosed.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705 (1972).  Not every deprivation is protected by the Due Process Clause, and declining to rehire one for employment, absent assertions which would damage one's standing, reputation, integrity or community associations, is not a deprivation of a protected liberty interest.  Roth, 408 U.S. at 572-573, 92 S.Ct. at 2706-2707.

Plaintiff obtained his license in about 1961.  The Rule was adopted in 1959.  Plaintiff was subject to the Rule requiring retirement at age 60 from the inception of his

career, and has never had an expectation that he could pilot a commercial aircraft after age 60. Plaintiff had no liberty interest when the FTEPA was enacted, and the FTEPA did not divest him of a liberty interest. Further, the FTEPA enlarged the period during which Plaintiff could continue to work as a commercial airline pilot until age 65. Because of the statute, Plaintiff was placed on the "pilot hiring list" for United Airlines in February, 2008. Doc. 43, p. 5. Moreover, Plaintiff is not entirely precluded from being a pilot beyond age 60 or 65. He is merely precluded from piloting "commercial" aircraft of more than thirty passengers. Aman v. F.A.A., 856 F.2d 946, 948 (7th Cir. 1988); *see* doc. 52, p. 24, n.7. Plaintiff still may pilot aircraft in other circumstances.

Plaintiff's alternative challenge that the FTEPA violates his Due Process rights because of the "protection for compliance" provision, § 44729(e)(2), *supra*, n. 4, fails as well. *See* doc. 43, p. 13. Where Congress creates a limitation on liability for compliance with federal law, or even completely forecloses relief for example, through immunity, it does not violate due process. *See* Denson v. United States, 574 F.3d 1318, 1347 (11th Cir. 2009) (concluding that "state law liability simply cannot attach to the acts taken by federal officers in the course of their duties and committed in compliance with federal law"); *see also* Ohio v. Thomas, 173 U.S. 276, 283, 19 S.Ct. 453, 455, 43 L.Ed. 699 (1899) ("When discharging [their] duties under [F]ederal authority pursuant to and by virtue of valid Federal laws, [Federal officers] are not subject to arrest or other liability under the laws of the State in which their duties are performed."). Due process is not violated by the decision of Congress to declare that one who complies with federal law should not be liable for that compliance. See Coronado v. Bank Atlantic Bancorp, Inc., 222 F.3d 1315, 1319-1321 (11th Cir.), *cert.*

*denied*, 531 U.S. 1052 (2000) (concluding immunity existed under "safe harbor" provisions of the Annunzio-Wylie Act); *see also* 29 U.S.C. § 260 (providing a safe harbor for good faith belief by employer that the act or omission did not violated the Fair Labor Standards Act). Thus, the FTEPA does not violate Plaintiff's due process rights.

### Takings Clause

"The Takings Clause of the Fifth Amendment provides: '[N]or shall private property be taken for public use, without just compensation.' " Eastern Enterprises v. Apfel, 524 U.S. 498, 522, 118 S.Ct. 2131, 2146 (1998). "The aim of the Clause is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960), *quoted in* Eastern Enterprises, 524 U.S. at 522, 118 S.Ct. at 2146. However, there cannot be a takings violation if there is no "recognized property interest." Swisher Intern., Inc. v. Schafer, 550 F.3d 1046, 1056 (11th Cir. 2008), *relying on* Givens v. Alabama Department of Corrections, 381 F.3d 1064 (11th Cir. 2004) (holding that an Alabama inmate had no "property interest" in the interest that accrues in their inmate bank account).

The determination of a "property interest" for a Takings Clause claim is the same as for a due process claim. Garcia-Rubiera v. Calderon, 570 F.3d 443, 457 (1st Cir. 2009). Plaintiff has no protected property interest for due process purposes. Therefore, he fails to state a claim for a violation of the Takings Clause.

### Equal Protection

Plaintiff contends that despite not claiming the denial of a fundamental right, strict scrutiny analysis is appropriate to review his equal protection claim. Doc. 58, p. 27. As noted by Justice Marshall in his dissenting opinion in Massachusetts Bd. of Retirement v. Murgia, *supra*, the right to work and engage in "the common occupations of life" is essential to the pursuit of happiness and implicit in the concept of liberty.

> Whether "fundamental" or not, " 'the right of the individual . . . to engage in any of the common occupations of life' " has been repeatedly recognized by this Court as falling within the concept of liberty guaranteed by the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), *quoting Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). As long ago as *Butchers' Union Co. v. Crescent City Co.*, 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585 (1884), Mr. Justice Bradley wrote that this right "is an inalienable right; it was formulated as such under the phrase 'pursuit of happiness' in the declaration of independence . . . . This right is a large ingredient in the civil liberty of the citizen." *Id.*, at 762, 4 S.Ct., at 657 (concurring opinion). And in *Smith v. Texas*, 233 U.S. 630, 34 S.Ct. 681, 58 L.Ed. 1129 (1914), in invalidating a law that criminally penalized anyone who served as a freight train conductor without having previously served as a brakeman, and that thereby excluded numerous equally qualified employees from that position, the Court recognized that "all men are entitled to the equal protection of the law in their right to work for the support of themselves and families." *Id.*, at 641, 34 S.Ct., at 684.

Murgia, 427 U.S. at 322, 96 S.Ct. at 2571 (dissenting opinion). Freedom to earn a living in the field of one's choice is a significant liberty enjoyed in this nation. The means to provide for one's family by engaging in a field of labor that is appealing and satisfying is certainly part of the American ideal and equates with the pursuit of happiness. Yet while such decisions are fundamental in life, it is not a fundamental right guaranteed by the Constitution.

The Supreme Court has held that "equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly

interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312-313, 96 S.Ct. 2562, 2566 (1976) (applying rational basis analysis to equal protection challenge of state law requiring mandatory retirement of state police officer at age 50), *explaining* San Antonio School District v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973). "We have declined, however, to extend heightened review to differential treatment based on age." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 441, 105 S.Ct. 3249, 3255, 87 L.Ed. 2d 313 (1985), citing Murgia. This case, similar to the Murgia case, does not involve interference with a fundamental right nor does it operate to the disadvantage of a suspect class. Rational basis is the proper standard of review for this legislative classification.

Thus, the legislation must be upheld against an equal protection challenge if there is any "reasonably conceivable state of facts that could provide a rational basis for the classification." Swisher Intern. Inc. v. Schafer, 550 F.3d 1046, 1060 (11th Cir. 2008), *quoting* F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). "The rational basis test demonstrates 'the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one,' and perfection is not required in making the necessary classifications. Swisher Intern. Inc., 550 F.3d at 1060, *quoting* Murgia, 427 U.S. at 314, 96 S.Ct. at 2567. The rational basis test is a "paradigm of judicial restraint," F.C.C., 508 U.S. at 314, 113 S.Ct. at 2101, because the Court must give a "strong presumption of validity" to legislative classifications. Lofton v. Secretary of Dept. of Children and Family Srvcs., 377 F.3d 1275, 1277 (11th Cir. 2004), *quoting* F.C.C., *id.,* at 319, 113

S.Ct. at 2642.  It is not for this Court to "judge the wisdom, fairness, or logic of legislative choices."  FCC, 508 U.S. at 313, 113 S.Ct. at 2100-01; *see also* Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995), *quoted in* Houston v. Williams, 547 F.3d at 1363.  The judiciary does not operate "as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976), *quoted in* Houston, 547 F.3d at 1363.  Rather, the judiciary is to determine if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993), *quoted in* Houston, 547 F.3d at 1363; *see also* Georgia Cemetery Ass'n, Inc. v. Cox, 353 F.3d 1319, 1320 -1321 (11th Cir. 2003) (stating that "[a]ll there need be is a conceivable rational basis" to uphold legislation against an equal protection challenge).

An age limit of 60 for pilots has repeatedly been found to be a reasonable standard for the half-century the "Age 60 Rule" was in effect.[11]  Protection of passengers on large commercial planes is indisputably a significant governmental interest.  It is reasonably conceivable that sudden incapacitation of a pilot presents a grave risk to public safety, and that the risk of sudden incapacitation increases with age.

---

[11] The Age 60 Rule was challenged numerous times, but has consistently been upheld. *See*, *e.g.,* Air Line Pilots Association, International v. Quesada, 276 F.2d 892 (2d Cir. 1960), *cert. denied*, 366 U.S. 962 (1961) (holding the age 60 rule was not arbitrary or discriminatory); O'Donnell v. Shaffer, 491 F.2d 59 (D.C. Cir. 1974) (adoption of the Rule did not require formal adjudicatory hearing); Coupé v. Fed. Express Corp., 121 F.3d 1022 (6th Cir. 1997); Carswell v. Air Line Pilots Ass'n Intern., 540 F.Supp.2d 107, 115 -116 (D. D.C. 2008); Prof.'l Pilots Federation v. F. A. A., 118 F.3d 758 (D.C.Cir. 1997); Air Line Pilots Ass'n, Int'l v. Quesada, 276 F.2d 892, 894-98 (2d Cir.1960) (rejecting challenge to the Age 60 Rule).

Had Congress drawn the line at age 25, a debatable equal protection claim might exist, but it is reasonably conceivable that a person age 65, at least with current life spans, is at greater risk of sudden incapacitation than a younger pilot. The fact that other countries may permit pilots to fly large commercial aircraft beyond age 65 does not show a violation of equal protection. Congress could rationally decide that there would be too much disruption of foreign air commerce into this country if foreign pilots were subjected to the new rule. Likewise, that Congress elected to protect the seniority of those pilots still employed, and to not make the FTEPA retroactively apply to pilots who had been affected by the Age 60 Rule in the prior five years, has a conceivable rational basis. That decision fell harshly upon pilots like Plaintiff, who turned 60 before the FTEPA was enacted but still are not age 65, but that is not a basis for this court to second-guess Congress. Similarly, that Congress chose a bright line, and did permit decisions on an individual basis, does not show that the choice was irrational. Where a fundamental interest is not implicated, this court does not have the authority to fine-turn a Congressional choice under the guise of enforcing the Equal Protection Clause. Congress is entitled to draw a line that differs from the choice of other countries so long as the line is reasonably drawn, and this one is. Because the legislation passes the rational basis test, it survives Plaintiff's equal protection challenge and the motion to dismiss should be granted as to this claim.

### Bill of Attainder

The Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. Art. 1, § 9, cl. 3, *quoted in* Houston v. Williams, 547 F.3d 1357, 1364 (11th Cir. 2008). "A bill of attainder is 'a law that legislatively determines guilt and

inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.' " <u>Nixon v. Adm'r of Gen. Servs.</u>, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977), *quoted in* <u>Scheerer v. U.S. Atty. Gen.</u>, 513 F.3d 1244, 1253, n.9 (11th Cir. 2008).  Plaintiff contends that the "non-retroactivity" clause of the FTEPA is unconstitutional as a bill of attainder, doc. 43, pp. 13-14, but the statute does not inflict punishment on Plaintiff nor does it determine guilt.  The intent of the statute, as noted above, is to protect the public and to *increase* the upper permissible age for pilots.  The FTEPA is a benefit and not a punishment.

The non-retroactivity clause of the FTEPA also works to the benefit of those pilots who had already reached the age of 60 prior to enactment, by enabling them to resume flying until age 65, but providing that newly hired pilots could not bump the seniority status of those pilots currently flying.  The legislative decision to do so preemptively solved a potential conflict, but that policy decision is not a punishment. The motion to dismiss should be granted as to this claim as well.

### First Amendment

Plaintiff alleges that the "Protection for Compliance" provision violates his First Amendment rights as the court house doors are barred to him.  The safe harbor provision clarifies that actions taking in conformity with the Act "may not serve as a basis for liability," yet Plaintiff is not precluded from challenging the Act or its provisions. This case aptly demonstrates that Plaintiff's First Amendment right to seek redress and have access to the courts is intact.  The motion to dismiss should be granted as to this claim.

### Conclusion

As noted at the outset, this is a hard case on the facts. The FTEPA allowed Plaintiff to continue to hold a license to fly until age 65. But since he was no longer employed with United, he no longer had his seniority when he reapplied for a job. Had the FTEPA been enacted seven months earlier, Plaintiff might still be a pilot for United, at least until May, 2012, when he becomes 65.

Nonetheless, Defendants' motion to dismiss, doc. 52, should be granted. Plaintiff's claims for monetary damages against the federal Defendants must be dismiss because Defendants have sovereign immunity. Plaintiff's claims concerning the Age 60 Rule must be dismissed as moot because there is no longer an Age 60 Rule and, moreover, this Court lacks jurisdiction over Plaintiff's claims concerning his request for an exemption to the Age 60 Rule and the denial of that request by the FAA pursuant to 49 U.S.C. § 46110. Finally, the FTEPA survives each of Plaintiff's challenges to the constitutionality of the Act.

**Plaintiff's Motion to Strike, doc. 56**

Plaintiff requested that the Fair Treatment for Experience Pilots Act and the Age 60 Rule be stricken as unconstitutional. Since the motion to dismiss should be granted, Plaintiff's challenge to the FTEPA should be summarily denied. The challenge to the Age 60 Rule is moot as explained above.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, doc. 52, be **GRANTED** and Plaintiff's amended complaint, doc. 43, be **DISMISSED** as to the federal Defendants. It is further **RECOMMENDED** that the Plaintiff's motion to strike, doc. 56, is **DENIED** as the FTEPA survives constitutional

scrutiny and the challenge to the Age 60 Rule is moot. Finally, it is recommended that the case be **REMANDED** to the undersigned for further proceedings as to the claims remaining against United Air Lines.

**IN CHAMBERS** at Tallahassee, Florida, on December 3, 2009.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**