**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

TROY G. AVERA,

       Plaintiff,

v.                                    CASE NO.  4:08cv550-RH/WCS

UNITED AIR LINES et al.,

       Defendants.

_____/

**ORDER GRANTING SUMMARY JUDGMENT**

The plaintiff was a commercial airline pilot.  He was forced to retire at age 60 under the Federal Aviation Administration's now-repealed "age 60 rule."  He sued his employer and the federal government asserting a variety of claims including age discrimination.  A prior order dismissed the claims against the federal government. This order grants summary judgment for the employer and directs the entry of judgment ending the case.

The case is before the court on the magistrate judge's report and recommendation (ECF No. 109), the plaintiff's objections (ECF No. 110), and the employer's response (ECF No. 111).  I have reviewed de novo the issues raised by

the objections. The report and recommendation is correct and is adopted as the court's further opinion.

I

The defendant United Air Lines hired the plaintiff Troy G. Avera as a pilot in 1995. He flew 747s. For all the record shows, he was an excellent pilot and employee. Nobody has contended otherwise.

Throughout Mr. Avera's tenure at United, a pilot was allowed to fly only until the pilot reached age 60. This comported with the Federal Aviation Administration's "age 60 rule." The rule prohibited a pilot from flying a commercial airline at age 60 or above. *See* 14 C.F.R. § 121.383(c) (2006). The FAA adopted the rule based on its statutory authority to set "minimum safety standards" and "maximum hours or periods of service of airmen." 49 U.S.C. § 44701.

Mr. Avera turned 60 in May 2007. United terminated his employment as of his birthday.

By that time it was in the wind that Congress might raise the mandatory retirement age for commercial airline pilots. On the day before his birthday, Mr. Avera applied for a leave of absence, hoping to remain technically employed with the company until Congress acted. United's consistent policy, though, was not to allow a pilot to be on a leave of absence after the pilot was 60 and thus ineligible to

fly.  United turned down Mr. Avera's request to be on a leave of absence after age 60.

Mr. Avera now says United should have retained him as a simulator instructor.  He did not apply for the job.  But he would not have gotten it even if he had applied.  United's consistent policy was to require a simulator instructor to occasionally serve as a pilot on a live route.  A person over age 60 could not serve as a simulator instructor because the person was ineligible to serve as a pilot on a live route.

Congress adopted the "Fair Treatment of Experienced Pilots Act"—referred to in this order as the "Pilots Act" or simply as the "Act"—with an effective date of December 13, 2007.  The Act increased the age limit for a commercial airline pilot to 65.  But the Act did not require or even allow an airline to reinstate a pilot who, like Mr. Avera, had turned 60 before the Act's effective date.  *See* 49 U.S.C. § 44729(e)(1).  Instead, the Act allowed an airline to rehire such a pilot *without* giving the pilot credit for prior seniority, longevity, or other benefits based on length of service.  *Id.* § 44729(e)(1)(B).

Mr. Avera applied to United under this provision.  On his first attempt to fill out the on-line application, Mr. Avera said he was not eligible to fly into all countries served by United.  This made him ineligible to be hired, and the on-line response promptly said so.  The reason for the conclusion was not immediately

apparent. When it was sorted out, Mr. Avera corrected the mistake, and he proceeded through the hiring process in the ordinary course, passing every hurdle and maintaining his position in line. Before he could be hired, however, the economy tanked, and United quit hiring new pilots. United has hired no new pilots since that time.

II

Mr. Avera filed this lawsuit against United and against the United States and two of its agencies: the FAA and the Department of Transportation. Mr. Avera's primary assertion was that the FAA should not have required commercial pilots to stop flying at age 60 and that United violated the Age Discrimination in Employment Act when it terminated Mr. Avera as a result. Mr. Avera also asserted United should have kept him as an employee—either on a leave of absence, as a simulator instructor, or in another position.

Mr. Avera also asserted claims arising from his retirement benefits. He alleged that United violated the Employee Retirement Income Security Act by providing him retiree health benefits below those that would have been available had United not renegotiated its benefits package in 2003 in connection with a chapter 11 bankruptcy proceeding. And Mr. Avera asserted that by tying benefits to time in service, the benefits package discriminated based on age.

An earlier order granted the federal defendants' motion to dismiss and

directed the entry of a judgment in their favor under Federal Rule of Civil Procedure 54(b). But the order—and the judgment entered based on the order—explicitly referred only to the FAA and DOT, not to the United States itself. This order directs the entry of a judgment dismissing any remaining claims against the United States, thus eliminating any question about whether the 54(b) judgment achieved that result.

The claims against United are now before the court on its summary-judgment motion. In response, Mr. Avera has advanced the claims set out in the amended complaint and has made a new assertion: that United violated ERISA or the ADEA at the time of the bankruptcy proceeding by making a one-time distribution of securities. The distribution apparently was intended to compensate employees for accepting a union contract with reduced salary and benefits.

III

Mr. Avera's primary contention is that United violated the ADEA by forcing him to retire at age 60 and not reinstating him when Congress adopted the Pilots Act. The short answer is that Congress took no issue with the age 60 rule while it was in effect, and, when Congress increased the age limit to 65, it did not require or even allow an airline to reinstate a pilot. Instead, Congress authorized an airline only to rehire a pilot without retroactive seniority. Congress's specific action on this trumps any effect the ADEA otherwise would have.

United acted precisely in accordance with the law at every stage. It took Mr. Avera off the flight line when he turned 60. United perhaps could have challenged the age 60 rule at an earlier point, but it probably would have lost. And it was not age discrimination for United to treat pilots differently based on whether, under the applicable federal regulations as then in effect, they were or were not eligible to fly. Moreover, by the time Mr. Avera turned 60, any prudent carrier would have abided the age 60 rule and awaited further action by Congress. That is what United did.

When Congress acted, United again followed the law, allowing Mr. Avera to apply for a pilot position but not reinstating him to his prior position. United put Mr. Avera's new application in line just as it did every other application. There was absolutely no difference based on age in the treatment of Mr. Avera's application, on the one hand, and the treatment of younger applicants, on the other hand. Nothing in the Pilots Act or ADEA required United to jump Mr. Avera ahead of other new applicants.

Finally, United considered Mr. Avera's new application on the merits without a hint of age discrimination. Mr. Avera made a mistake on the on-line application that caused a delay. When the mistake was identified and corrected, United went forward, approving the application at every step. Mr. Avera failed to get a new job as a pilot only because the economy tanked and United quit hiring.

Mr. Avera's age had nothing to do with it.

IV

The assertion that United should have kept Mr. Avera on a leave of absence adds little to the analysis. If the law allowed United to take him off the flight line—as it did—it was not age discrimination to terminate his employment rather than put him on a leave of absence with only cosmetic effects. And putting him on a leave of absence would not have affected his ability to return; the Pilots Act still would have prohibited his reinstatement to his prior position. The Pilots Act still would have allowed United to treat Mr. Avera the same as other new applicants and still would not have required United to jump Mr. Avera ahead of other new applicants in the queue.

V

Nor was it a violation of the ADEA for United not to offer Mr. Avera a position as a simulator instructor. First, Mr. Avera did not apply for such a position. And second, United consistently—and reasonably—insisted that an instructor occasionally fly a live route. A person over age 60 could not do that. If it was lawful for United to follow the age 60 rule and remove a person from the cockpit at age 60—as it was—then it also was lawful for United not to hire a person over age 60 as a simulator instructor.

VI

Mr. Avera's next claim is that United violated ERISA—and is continuing to do so—by failing to provide the vested retiree health benefits to which he says he was and is entitled.

United had a benefits package applicable to pilots during Mr. Avera's tenure. The package included retiree health insurance. A reasonable inference is that the health insurance was provided under an ERISA plan.

An employer can adopt an ERISA plan that requires the employer to provide vested benefits that cannot be reduced. *See*, *e.g.*, *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993). Mr. Avera correctly so asserts.

Mr. Avera claims that United's plan, as in effect before its chapter 11 bankruptcy proceeding, provided for vested benefits that could not be reduced. Mr. Avera asserts United violated ERISA by renegotiating the benefits package in connection with the chapter 11 proceeding and providing him benefits upon his retirement based on the renegotiated plan—not the vested benefits to which he says he was entitled under the prior plan.

The claim fails because Mr. Avera has provided no evidence that United's prior plan provided for vested benefits *that could not be reduced*. An employer can adopt such a plan, but it also can adopt a plan that allows reduction. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 72, 115 S.Ct. 1223, 131 L.Ed.2d

94, 78 (1995); *Owens*, 984 F.2d at 397-98. As the Eleventh Circuit has explained:

> Congress intended employers to be free to create, modify, or terminate the terms and conditions of employee welfare benefit plans as inflation, changes in medical practice and technology, and the costs of treatment dictate.

*Owens*, 984 F.2d at 398. Thus, "[a]bsent contractual obligation, employers may decrease or increase benefits." *Id.*

The record suggests that United's plan allowed reduction. And while the record is not conclusive on this, it was Mr. Avera's burden, in opposing United's summary-judgment motion, to present evidence in support of each element of his claim. He provided no evidence that United's prior plan did not allow reduction.

To be sure, Mr. Avera cites a Letter of Agreement signed in 2000 that provides, "The service requirement for eligibility for retiree medical shall be 5 years of continuous service. All other eligibility requirements shall remain the same." *See* ECF No. 89-4, p. 45 of 65. This means only that Mr. Avera became eligible for retiree health benefits after five years of service. It does not mean that United could not reduce the benefits available under the plan. *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 377 (5th Cir. 2008) (quoting *Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir. 1990), *aff'd*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)) ("[T]he mere fact that employee welfare benefits continue in retirement does not indicate that the benefits become vested for life at the

moment of retirement.").

In sum, Mr. Avera has not shown that United's prior ERISA plan prohibited modification or that United's reduction of benefits in conjunction with its bankruptcy filing violated ERISA in any respect.

## VII

Mr. Avera also asserts that the retiree health benefits discriminate based on age and thus violate the ADEA. The benefits vary based on time in service, but the ADEA does not prohibit an employer from treating employees differently based on time in service. Mr. Avera has not shown that the health benefits discriminate based on age or violate the ADEA in any respect.

## VIII

Mr. Avera's final claim—advanced for the first time in opposition to United's summary-judgment motion—is that United violated ERISA or the ADEA by making a one-time distribution of securities at the time of the chapter 11 proceeding. Because the claim was not included in the amended complaint and Mr. Avera has not sought leave to file a further amended complaint adding the claim, it would not provide a ground for denying United's summary-judgment motion, even if the claim was otherwise well founded.

And the claim is not otherwise well founded. First, the one-time distribution

was not an ERISA plan.  The report and recommendation sets out the analysis and authorities supporting this conclusion.

Second, the distribution did not violate the ADEA.  United made the distribution in exchange for concessions made by its employees in connection with the chapter 11 proceeding.  The concessions included a substantial salary reduction.  The record does not indicate the precise basis for allocating the securities distribution among employees, but it would not violate the ADEA to make a larger distribution to employees with more time left until retirement—and who thus gave up more by agreeing to a salary reduction.

Mr. Avera has not shown that the securities distribution violated the ADEA.

IX

For these reasons and those set out in the report and recommendation,

IT IS ORDERED:

United's summary-judgment motion, ECF No. 86, is GRANTED.  The clerk must enter judgment stating, "All remaining claims are dismissed with prejudice." The clerk must close the file.

SO ORDERED on March 31, 2011.

s/Robert L. Hinkle
United States District Judge